## HARRIET AYER *versus* SAMUEL W. AYER *et al.*

A mother, in consideration of the love and good will which she bore to her daughter who was then a married woman, conveyed certain real estate to H, in " trust and for the sole use and benefit " of the daughter during her life. It was *held*, that the legal estate vested in H, in trust for the separate use of the daughter; that this Court therefore had jurisdiction of a suit in equity brought by the daughter against her husband and the trustee to enforce the execution of such trust; that the husband, having received the rents and profits, was properly made a party to such suit; that the wife, although she had separated from her husband, was entitled to such rents and profits from the time of the separation, unless it should be clearly proved by the husband, that she had misconducted herself and had separated from him without cause or any manner of excuse and without his consent; and that no demand on the husband was necessary, it appearing by his answer, that he denied her right; but that otherwise a demand would have been necessary.

BILL in equity. The bill sets forth, that on August 12, 1824, Sally Humphrey conveyed to Prentiss Hobbs, one of the defendants, a lot of land with the buildings thereon, of the value of $4000, situated in Haverhill, to be held in trust by him and his heirs, for the sole and separate use of the plaintiff, then and ever since the wife of the other defendant, for and during her natural life ; that Hobbs accepted the trust and became seised of the estate accordingly ; that the other defendant, cohabiting and living with the plaintiff, occupied the estate and received the rents and profits thereof with her consent until November 8, 1830, on which day the plaintiff separated from her husband, with his consent, and refused to permit him any longer to occupy the estate or to receive the rents and profits thereof; but that nevertheless he had ever since occupied the same and received the rents and profits to his own use ; that the plaintiff has ever since lived separate and apart from him and has frequently demanded of the defendants that she might be permitted to occupy the estate and receive the rents and profits thereof to her sole and separate use, but that the defendants have refused such permission, pretending that the right to the same belonged exclusively to her husband. In consideration whereof the bill prays, that the defendants may full and true answers make, &c., that they may be compelled, by a decree of this Court, to account to the plaintiff for the rents and profits, and to permit her to

Ayer
*v.*
Ayer.

receive the same to her sole and separate use, and that she may have such other and further relief as the nature of the case shall require, and to the Court shall seem meet.

The deed which is referred to in the bill, set forth, that the grantor, in consideration of the love and good will which she bore to the plaintiff, who was her daughter, and of one dollar paid by Hobbs, conveyed the premises to Hobbs, " to have and to hold to him, his heirs, executors and administrators, in trust and for the sole use and benefit of the plaintiff during her natural life," with remainder over to two children of the plaintiff.

The answer of the defendant Ayer, averred, that by the deed of Sally Humphrey, Hobbs took an estate in the premises for the life of the plaintiff, for her use, which use, by operation of law, was immediately executed, and gave to her a freehold estate therein in possession for her life ; that the respondent and the plaintiff, in her right, became rightfully seised and possessed of the premises, and occupied them accordingly by living together thereon until November 8, 1830, when the plaintiff voluntarily, without justifiable cause and against his desire and wish, left his bed and board, and thenceforward continually absented herself from his house ; that the respondent had since that time retained the control of the premises ; that the other defendant, Hobbs, has, ever since the departure of the plaintiff, combined and confederated with her for the purpose of obtaining the premises from the respondent unlawfully; and that the right to receive the rents and profits of the premises belongs to him alone, as husband of the plaintiff.

The defendant Hobbs demurred to the bill ; and the plaintiff joined in the demurrer.

The evidence in the case is sufficiently set forth in the opinion of the Court.

*March 11th.*     *Leland,* for the plaintiff, to the point, that the words " sole use," in the deed of Sally Humphrey, were equivalent to the words, *separate use,* this being a conveyance to a married woman, cited Clancy on Husband and Wife, 267 ; *Adamson* v. *Armitage,* Coop. Ch. Cas. 283, and 19 Ves. 416 ; *Prichard* v. *Ames,* Turner & Russell, 222; *Ex parte Ray,* 1 Madd

Ch. R. 199 ; to the point, that where a conveyance creates a trust for a married woman without appointing a trustee, the husband will be considered as the trustee, *Rollfe* v. *Budder*, Bunb. 187; Clancy on Husband and Wife, 257, and cases cited ; *Dixon* v. *Olmius*, 2 Cox's Eq. Cas. 414 ; *Rich* v. *Cockell*, 9 Ves. 369 ; *Parker* v. *Brooke*, 9 Ves. 583 ; to the point, that the intent of the parties is to be regarded in determining whether the conveyance created a trust or a use executed, *Newhall* v. *Wheeler*, 7 Mass. R. 189 ; *Norton* v. *Leonard*, 12 Pick. 152 ; Clancy on Husband and Wife, 256 ; Sand. Uses, 244 ; *Harton* v. *Harton*, 7 T. R. 652 ; *St. Philip* v. *Smith*, 4 M'Cord, 452 ; *Doe* v. *Walbank*, 2 Barn. & Adol. 554.

*Fletcher*, for the defendant Ayer. By the true construc tion of the deed, the plaintiff has not a right to the separate use of this estate, to the exclusion of the husband. To produce this effect the intent of the parties must be distinctly expressed ; Clancy on Husband and Wife, 262, 256 ; and it is not so manifested in this deed. *Lee* v. *Prieaux*, 3 Bro. C. C. 381 ; *Jacobs* v. *Amyatt*, 1 Madd. Ch. R. 376, note , *Wills* v. *Sayers*, 4 Madd. Ch. R. 409 ; *Bullock* v. *Menzies*, 4 Ves. 798. This was a technical use executed by the stat ute of uses. An estate for life vested in the wife, and by law the husband became entitled to the use and occupation. *Newhall* v. *Wheeler*, 7 Mass. R. 189 ; *Davis* v. *Hayden*, 9 Mass. R. 514 ; *Marshall* v. *Fisk*, 6 Mass. R. 24 ; *Cox* v. *Edwards*, 14 Mass. R. 491 ; *Northampton Bank* v. *Whiting*, 12 Mass. R. 104. But suppose this to have been a trust, then an equitable estate was vested in the wife for life, to which the defendant Ayer became entitled as her husband. Trowbridge's Reading, 3 Mass. R. 573 ; *Goodwin* v. *Hubbard*, 15 Mass. R. 210. As the plaintiff voluntarily and unnecessarily left her husband, the Court will not aid her in obtaining the benefit of her separate estate, and thus enable her to live separately from him in violation of her duty. *Lee* v. *Lee*, 1 Dickens, 321 ; *S. C.* 2 Dickens, 806 ; *Moore* v. *Moore*, 1 Atk. 272. The husband is not liable for the rents and profits, no demand having been made upon him till the filing of the plaintiff's bill.

WILDE J. delivered the opinion of the Court. The first question to be considered is, whether this Court, as a court of equity, has jurisdiction of the case as stated in the bill. This depends on another question, namely, whether the legal estate vested in Hobbs in trust according to the terms of the deed, or whether it vested in the plaintiff by virtue of the statute of uses. The use of the word " trust " is not deci sive on this point, but the intention of the donor is to be as- certained by the object of the gift, and the situation of the parties at the time when the deed was executed. And if the intention was, to give a separate interest to the wife, free from the control of her husband, then it is very clear, that this provision for the wife is to be regarded by a court c equity as a technical trust, and not as a use executed by the *St.* 27 *Hen.* 8, *c.* 10. It is true, that the words of that statute are sufficiently comprehensive to extend to all uses and trusts whatever ; and before the statute these words were used in- discriminately to effectuate the same purpose. But after the statute, courts of equity distinguished between technical uses and trusts, preserving the latter from the operation of the statute, and moulding them into such forms, and regulating them by such rules, as would not interfere with the true in- tention of the statute. In pursuance of this construction, it has long been well established, that when property is conveyed to trustees for the separate use of a married woman, a court of equity will enforce the performance of the trust, and pro tect it against the legal rights of the husband. Such a trust however must be clearly and distinctly expressed before the Court will establish it against the rights of the husband, and the question is, whether the trust which the plaintiff seeks to enforce, is thus clearly and distinctly expressed.

There are numerous decisions on this point, according to which there can be no doubt that the rents and profits of the estate conveyed to Hobbs were given in trust for the separate use of the plaintiff. Most of these decisions have taken place with respect to devises, but the same reasons would apply to trusts created by deeds ; for whatever may be the form of the gift, the intention of the donor is to govern, if the intention is designated with sufficient certainty. No particular form of

words or technical language is necessary to express this intention. If it appears from the words of the deed, that a separate provision was intended to be made for the wife, it will be sufficient. Where property is given in trust for the sole and separate use of a married woman, or in trust " to permit her to take the rents and profits," or " to pay the rents and profits to her," there can be no doubt of the intention of the donor to create a separate interest in her to the exclusion of her husband. And other expressions have been frequently held to be equivalent. In *Kirk* v. *Paulin*, 7 Vin. Abr. 95, a bequest to a married woman " to be at her disposal," was held to give her a separate estate. And in *Tyrrel* v. *Hope*, 2 Atk. 558, where before marriage the intended husband had given a promise in writing to his intended wife, that " she should enjoy and receive the issues and profits of one moiety of the estate then in the possession of her mother, after the decease of her mother," it was held by Lord *Hardwicke*, that these words gave the wife a separate estate, and that the writing could bear no other construction, although the words " separate use " were not in the agreement ; for that it could not be intended that the wife should receive the rents and profits, if they were to be the property of the husband. And in *Darley* v. *Darley*, 3 Atk. 399, an estate given to the husband " for the livelihood " of his wife, was considered as a trust for the wife. So, the words " to pay into the proper hands of the wife," and the words " her receipt to be a discharge," have been held to import an exclusive interest in the wife. *Hartley* v. *Hurle*, 5 Ves. 540. The question in all these cases and others, has been, what was the intention of the donor or person creating the trust ; and if the intention to create a separate estate or interest in the wife, is distinctly expressed, or manifestly appears by circumstances connected with the words of gift, it is immaterial in what language the intention is manifested. In the present case, the estate was conveyed to the trustee " in trust and for the sole use and benefit of the plaintiff," during her natural life, she then being married. These words, we think, distinctly express an intention to create a trust for the separate use of the wife, and would entitle her to the rents and profits to the exclusion of

Ayer
v.
Ayer.

her husband, if the conveyance had been made to the husband on the same trust, or if the land had been conveyed to the wife directly for her sole use and benefit for life, and remainder to her three children, without vesting the estate in trustees. It seems to be now settled in England, although formerly doubted, that a court of equity will supply the want of trustees by the gift or devise, and make the husband trustee.

But this case does not depend alone upon the words by which the trust is expressed, although those seem sufficient to ascertain the meaning of the gift. It appears, that the plaintiff was married at the time of the conveyance of the trust estate, that it was made by the mother of the plaintiff in consideration of love and good will, and that the legal estate was conveyed to a trustee. These are strong circumstances to show, that it was the intention of the grantor to make a separate provision for the wife ; and although these circumstances alone would not be sufficient to exclude the husband, yet when, in addition, it is declared, that the trustee shall hold the estate during the life of the wife for her sole use and benefit, it seems impossible to doubt as to the true intent and meaning of the grant. We think it manifest, that the legal estate is in Hobbs, that he holds it in trust for the sole and separate use of the plaintiff, and that he is bound to collect and pay over to her the rents and profits of the trust estate. It follows, that this Court has jurisdiction of the case ; and, upon the facts alleged in the bill, there can be no question, that the husband was properly made a party to the suit, he having received the rents and profits of the trust estate, for which he will be liable to account, unless the Court should refuse the relief prayed for in consequence of the supposed misconduct of the wife. There are, no doubt, cases where a husband would be entitled to come into a court of equity to restrain the trustees of his wife from proceeding at law for her separate maintenance, or where the court would refuse her relief on a bill to enforce a trust therefor. But to justify the court thus to interfere, the misconduct of the wife must be clearly proved ; such, as that she had been guilty of adultery or criminal conversation, or had left her husband without any cause whatever. And we are clearly of opinion,

that the proof is wholly insufficient to justify the Court on this ground to deny the relief prayed for. Perhaps the plaintiff has failed to prove such misconduct on the part of her husband as would fully justify her in leaving him without his consent ; but a reasonable excuse appears, and this is sufficient. The burden of proof is on the husband to show his wife's misconduct, and that she separated from him without cause or any manner of excuse and without his consent. This the evidence wholly fails to prove. On the contrary, all the evidence tends to show the misconduct of the husband. There is direct evidence, that he treated her unkindly and that they lived unhappily together, although up to the time of separation there is not the slightest imputation on her conduct or character, except that she complained of her husband's conduct and character, and his treatment of her, without sufficient cause. It appears very clearly that the plaintiff's feelings had been deeply wounded by the reports circulated against her husband, and for this and other reasons she came to a determination in 1825 to separate from him ; but obstacles and difficulties intervened, and she yielded to their influence, reluctantly, no doubt. But whatever may have been her reluctance to remain, it does not appear that her husband had any just cause of complaint against her until her final separation. Nor does it appear, that he, in the mean time, took any measures to vindicate himself against the aspersions cast on his character, or took any pains to soothe her feelings of mortification and wounded delicacy by kind and affectionate treatment. Under the influence of these painful circumstances, she, in 1830, finally came to the resolution to insist on a separation, and he consented ; unwillingly, no doubt ; but from some motive he was induced to come to an agreement, and the separation took place. He allowed her to take away the children, the furniture, and other property ; and this furnishes a strong presumption that he thought, at least, she was excusable in separating herself from him, as Lord *Hardwicke* remarks, in the case of *Moore* v. *Moore*, 1 Atk. 277, when commenting upon similar evidence.

This case was cited by the defendant's counsel as a leading case, and for the purpose of establishing the doctrine, which

Ayer
v.
Ayer.

no one will doubt, that a wife is not to be encouraged to leave her husband in violation of the marriage contract, by the expectation of enjoying a separate maintenance, and that in such cases a court of equity may interfere. But undoubtedly a wife would be justified in deserting her husband for extreme cruelty and for other causes. And circumstances may occur, and too frequently do occur, which may render a separation conducive to the happiness of both parties, such as perpetual dissensions, alienated affections and other inducements. The case of *Moore* v. *Moore* is certainly a very strong case in favor of the plaintiff. There it appeared, that Sir Francis Moore had before and in consideration of the marriage to be had between him and his intended wife, conveyed lands to trustees, upon trust to pay out of the rents and profits £100 a year to Lady Moore, for her separate use. The marriage took effect, and the parties lived together with great harmony for more than twenty years, when some disputes arising between them about her pin-money, she privately left him, and went to France, where she continued to reside ; and she having prevailed with her trustees to bring an ejectment for the trust lands, Sir Francis brought a bill in equity, complaining of his wife's conduct, and insisting that she was only entitled to the annuity during her cohabitation with him. He also offered to pay the annuity if she would live with him, and to receive her kindly, and prayed to be relieved against the payment of the annuity and for an injunction to stay proceedings in eject-ment. Lord *Hardwicke* decided, that there was no sufficient foundation for relieving against the payment of the annuity : and the principles upon which that decision was made seem to us to be entirely correct. The decision was not founded on the justification of the wife ; for the chancellor says, that under the circumstances of the case she was not justifiable in going away, but was so far excusable, that she ought not to be deprived of her support, for the purpose of compelling her to return to her husband. But if the decision had been the other way, it would have little weight against the plaintiff's claim in the present case. The two cases differ much in their circumstances. That was a case, where the wife had eloped without justifiable cause. In this case there was a separation

Ayer
<i>v.</i>
Ayer.

ny consent, and there is much reason to believe, that if the
facts could be fully investigated, the wife would be excusable,
if not perfectly justifiable, in leaving her husband without his
consent.   In the case of *Lee* v. *Lee*, 1 Dickens, 321, and 2
Dickens, 806, it was proved, that the wife had eloped from
her husband without any cause, so that the decision in that
case cannot avail the defendants ; for to maintain the defence
on this ground, the plaintiff's misconduct must be most clearly
and plainly proved.   In *Watkins* v. *Watkins*, 2 Atk. 96, which
was a bill brought against the husband to have a maintenance
out of her fortune, upon a suggestion of cruel usage, there was
considerable evidence of the wife's misconduct and indecent
behaviour ; but Lord *Hardwicke* decreed in favor of the wife,
because the proof of her misbehaviour was not full.

Upon the whole, it is quite clear that the plaintiff is entitled
to the relief prayed for, and that the answer of her husband is
wholly insufficient.   The case will, therefore, be referred to
a master to take an account of rents and profits, unless the
parties should agree upon the amount ; in which case, a final
decree may be now entered.   The plaintiff is entitled to the
rents and profits from the time of the separation.   No demand
on the husband was necessary ; for it appears by his answer,
that he has denied her right, which dispenses with a demand ;
f otherwise, it would be necessary.